UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, et al., | ) ) ) | CASE NO. 5:11CV350 |
| PLAINTIFFS, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | |
| PACIFIC EMPLOYERS INSURANCE COMPANY, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) ) ) | |

Before the Court is defendant's Motion to Dismiss (Doc. No. 12) asserting that this case must be dismissed because plaintiffs are attempting to re-litigate the same insurance coverage dispute against defendant that was previously litigated and resolved in defendant's favor in a Louisiana federal court. Plaintiffs have filed a Brief in Opposition (Doc. No. 14) and defendant filed a Reply Brief (Doc. No. 15). For the reasons set forth herein, the motion is **DENIED**.

I. BACKGROUND

On February 17, 2011, Bridgestone Americas Tire Operations, LLC and Firestone Polymers, LLC (collectively, "Bridgestone/FP") filed a Complaint for declaratory judgment and breach of contract against Pacific Employers Insurance Company ("PEIC"). (Doc. No. 1.) In the instant motion to dismiss, PEIC argues that this lawsuit is an improper attempt to re-litigate an insurance coverage dispute that the parties previously litigated in the U.S. District Court for the

Western District of Louisiana. That dispute was resolved in PEIC's favor and affirmed on appeal. PEIC asserts that the instant lawsuit is barred by the doctrine of *res judicata*.

**A.     The Louisiana Lawsuit**

On February 1, 2008, Bridgestone/FP filed a Complaint for declaratory relief and breach of contract against PEIC and other insurance companies in the U.S. District Court for the Western District of Louisiana under Case No. 2:08-cv-151 ("the Louisiana Coverage Action").[1] In the Louisiana Coverage Action, Bridgestone/FP alleged, *inter alia*:

> 12.   The Plaintiffs are legal successors in interest to the defendants named in the lawsuit entitled *Fred Blackwell, et al. v. Bridgestone/Firestone, Inc., et al.*, Case No. 98-1100 on the docket of the 14th Judicial Court in the Parish of Calcasieu, State of Louisiana ("*Blackwell*"), in which the plaintiffs allege the defendants and/or their legal predecessors are liable to the *Blackwell* plaintiffs for occupationally-induced hearing loss and other losses and damages, all as asserted in the *Blackwell* plaintiffs' original and first through eleventh supplemental and amending petitions. The list of *Blackwell* plaintiffs, as supplemented from the time of its filing through the present and as further supplemented by any future pleadings therein, and any persons, including, for example persons lacking procedural capacity, on whose behalf those plaintiffs may appear, have appeared, or will appear, is incorporated herein by reference, without admitting liability to any of them. All are included within the term "*Blackwell* plaintiffs."
>
> 13.   While denying all liability to the *Blackwell* plaintiffs, the Plaintiffs herein aver on information and belief that the Defendants and/or their predecessors had issued, at various times relevant to the *Blackwell* plaintiffs' claims, policies providing liability insurance coverage in favor of the Plaintiffs' and/or Plaintiffs' predecessors (Plaintiffs and their predecessors will hereafter collectively be referred to as "Firestone"), requiring the Defendants to defend and/or fund the defense of Firestone against the *Blackwell* plaintiffs' claims and to indemnify Firestone against any amounts it may be required to pay any *Blackwell* plaintiffs. The Plaintiffs herein are therefore entitled to defense and indemnity from the Defendants with respect to the *Blackwell* plaintiffs' claims.

---

[1] A copy of the original Complaint is attached as Ex. B to the Motion to Dismiss. It named ACE USA, Inc. as one of the defendants. However, Bridgestone/FP amended the Complaint on June 4, 2008 to substitute PEIC as the proper party defendant. Otherwise, the Amended Complaint is substantively identical to the original Complaint.

  14.  The Plaintiffs have made demand upon the Defendants to honor their defense and indemnity obligations under the policies, and they have provided the Defendants with the information necessary for them to evaluate their obligations, but Defendants have failed to acknowledge insurance coverage, to provide or fund the Plaintiffs' defense, or to participate in efforts to settle any *Blackwell* plaintiffs' claims.

(Ex. B.) Count I of the Louisiana Coverage Action sought a declaration that PEIC and the other insurers owed Bridgestone/FP defense and indemnity obligations for the *Blackwell* Lawsuit "under their respective [liability] policies." (Ex. B, ¶ 19.) Count II alleged a claim of breach of contract against PEIC and the other insurers for their "failure to meet their defense and indemnity obligations under their respective policies [...]." (Ex. B, ¶ 21.)

  Nowhere within the Louisiana Coverage Action Complaint did Bridgestone/FP identify the individual policies by number, by policy period, or in any other manner. Nor did it attach to that Complaint copies of any of the liability insurance policies which allegedly provided coverage for the underlying claims in the *Blackwell* Lawsuit, asserting that these policies were either "voluminous" or unavailable and "because the [insurers] should be in possession of the policies or the information necessary to reconstruct copies of the policies." (Ex. B, ¶ 2.)

  On May 2, 2008, Bridgestone/FP filed a Motion for Partial Summary Judgment ("MPSJ") against PEIC in the Louisiana Coverage Action, seeking summary judgment with respect to five policies listed in an Exhibit B attached to the motion.[2] The MPSJ asserted that, in the *Blackwell* Lawsuit, Bridgestone/FP had been "sued by former employees who worked [...] at various times from 1944 through 2005" and attached a list of "59 plaintiffs" covered by the *Blackwell* Lawsuit. (Ex. C at 1, and Ex. A attached thereto.) Attached to the MPSJ was the affidavit of William Victory, who was Bridgestone/FP's insurance agent with respect to the

---

[2] A copy of the MPSJ is attached to the instant Motion to Dismiss as Ex. C.

3

various liability insurance policies issued to Bridgestone/FP by PEIC and the other insurers. (Ex. C, and Ex. C-1 attached thereto.) Mr. Victory stated that he had sent a letter dated August 17, 2005 to PEIC, on behalf of Bridgestone/FP, placing PEIC on notice of the *Blackwell* Lawsuit.[3] In the letter, Mr. Victory identified various liability insurance policies issued by PEIC under which Bridgestone/FP was seeking coverage and further noted that "[t]his matter is reported under any and all applicable policies whether or not cited." (Ex. C, and Ex. C-1-1 attached thereto.) Among those listed were Policy No. RSC-C23980046 with a policy period of 11/1/1984 to 11/1/1985 and Policy No. RSC-C26183881 with a policy period of 11/1/1985 to 11/1/1986.[4] In addition, the dates of employment of 41 of the *Blackwell* Plaintiffs would have fallen within the 1984-85 and 1985-86 policy periods. (*See* Ex. C, and Ex. A attached thereto.)

In their MPSJ in the Louisiana Coverage Action, Bridgestone/FP sought a declaration that the occupationally-induced hearing loss claims of the *Blackwell* Lawsuit plaintiffs were the result of "bodily injury by accident" rather than "bodily injury by disease." (Ex. C, pp. 4-8.)[5] This distinction was important because certain policies placed limitations on claims relating to "bodily injury by disease," which were not placed on claims relating to "bodily injury by accident." PEIC opposed the MPSJ and the Louisiana district court heard oral argument.[6] At the close of oral argument, the district court ruled orally from the bench, denying the MPSJ because relevant case law made clear that the occupationally-induced hearing losses were "bodily injury by disease." (*See*, Ex. F, Transcript of Oral Argument, at 11.)

---

[3] A copy of this letter is attached as Ex. 1 to the Victory Affidavit.

[4] These are the same two policies at issue in the instant lawsuit.

[5] Although the Complaint in the Louisiana Coverage Action also contained a breach of contract count, the MPSJ only sought a summary ruling on the declaratory judgment count of the complaint.

[6] *See* Minutes of Court, attached to the Motion to Dismiss as Ex. E.

PEIC and other defendant insurers then filed their own Motions for Summary Judgment ("MSJ").[7] The district court conducted oral argument on April 20, 2009 and ruled from the bench, granting all the MSJs because the claims were based on "bodily injury by disease" and were, therefore, barred by the time exclusions in the policies.[8] On May 7, 2009, the district court entered final judgment, stating that it had "resolved all of the remaining issues in this case through summary judgment rulings issued orally on April 20, 2009." (Ex. H.) The district court dismissed the case with prejudice. (*Id.*)

Bridgestone/FP appealed to the Fifth Circuit Court of Appeals, representing in its appellate brief that it was appealing "from the district court's final order disposing of all parties' claims." (Ex. I, at p. 2.) On June 17, 2010, the Fifth Circuit affirmed the judgment of the district court. (Ex. J.)

**B.     The Instant Lawsuit and the Motion to Dismiss**

On February 11, 2011, Bridgestone/FP filed the instant Complaint for declaratory judgment and breach of contract. As in the Louisiana Coverage Action, Bridgestone/FP alleges that it was a named defendant in the *Blackwell* Lawsuit wherein the plaintiffs sought damages for occupationally-induced hearing loss. Attached to the Complaint are two insurance policies issued by PEIC: Policy No. RSC-C23980046 (11/1/1984 to 11/1/1985) and Policy No. RSC-C26183881 (11/1/1985 to 11/1/1986).

---

[7] A copy of Pacific's MSJ is attached to the Motion to Dismiss as Ex. G.

[8] No one supplied a copy of this oral argument transcript. However, the Court accessed it through PACER. After hearing the arguments, the district court stated: "I don't find that the policy is ambiguous and I maintain my previous position that noise induced hearing loss is an injury by disease, and therefore, coverage is [un]ambiguously excluded. So the motions for summary judgment are granted." *Bridgestone Firestone North American Tire, LLC, et al. v. Liberty Mutual Insurance, et al.,* Case No. 2:08CV151 (W.D. La.) (Minaldi, J.), Doc. No. 90, at p. 21.

The question underlying the instant Motion to Dismiss is whether these two policies were among those litigated in the Louisiana Coverage Action, which would render the current claims barred by the doctrine of *res judicata*.

## II. DISCUSSION

### A. Legal Standard for a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must first provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

"Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008)).

### B. Analysis

#### 1. Law Relating to the Doctrine of *Res Judicata*

PEIC argues that, because this is a diversity action, Ohio law applies to determine whether this lawsuit is barred by *res judicata*. Bridgestone/FP does not disagree. The Court, however, concludes that, since the question relates to the preclusive effect of a prior *federal* court judgment, federal common law and the policies supporting *res judicata* control. *Taylor v.*

*Sturgell*, 553 U.S. 880, 891 (2008); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007).

To establish the defense of *res judicata*, defendant must show: (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims. *Walker v. Gen. Tel. Co.*, 25 Fed. App'x 332, 336 (6th Cir. 2001).

The third element above implicates what is known as "the declaratory judgment exception." The Restatement (Second) of Judgments § 33 (1982) provides:

> A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them *as to the matters declared*, and, in accordance with the rules of issue preclusion, *as to any issues actually litigated by them and determined* in the action. (emphases added.)

Comment c to Section 33 provides:

> A plaintiff who has lost a declaratory judgment action may also bring a subsequent action for other relief, subject to the constraint of the determinations made in the declaratory action. The theory is the same: *a declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced*. [...] (emphasis added.)

### 2. The Parties' Arguments

PEIC argues in its Motion to Dismiss that all of Bridgestone/FP's claims are barred by the doctrine of *res judicata* because the very same issues under the same policies were already resolved in PEIC's favor in the Louisiana Coverage Action.

In opposition, Bridgestone/FP argues that the only policies covered by the Louisiana Coverage Action were pre-1984 policies that contained a 36-month restriction on claims of "bodily injury by disease." Since the Louisiana district court concluded that the

7

*Blackwell* Lawsuit injuries were "bodily injury by disease," not "bodily injury by accident" as plaintiff had argued, the time limitation applied and there was no coverage. Therefore, PEIC had no duty to defend or indemnify for the *Blackwell* Lawsuit under those pre-1984 policies. It is Bridgestone/FP's position that the two policies at issue in the instant lawsuit were not part of the Louisiana Coverage Action and, because these two policies do not contain the 36-month restriction, the issue of PEIC's duty to defend and indemnify has not been decided.

In support of its position, Bridgestone/FP points to the MPSJ that it filed in that action wherein, as part of a Statement of Material Facts, it included a list of the policies at issue in the case. That list did not contain the two policies at issue in the instant lawsuit. Also attached to its MPSJ was the affidavit of William Victory, to which was appended copies of the five policies that Bridgestone/FP claims were at issue. The two policies at issue in the instant lawsuit were not included among those five attachments.

Bridgestone/FP also asserts that PEIC acknowledged in its brief in opposition to the MPSJ that "the subject insurance policies" were only the five policies referred to in the MPSJ and, further, that when PEIC later filed its own MSJ, it sought summary judgment only under the policies in effect from August 1, 1978 to November 1, 1982.

In response, PEIC argues that the scope of the two lawsuits must be determined by comparing their Complaints, not by examining the issues on which any given party may have moved for summary judgment. PEIC notes that the Complaint in the Louisiana Coverage Action is very broad, seeking defense and coverage for all the plaintiffs in the *Blackwell* Lawsuit.

### 3. Comparison of the Two Lawsuits

As a general matter, the scope of a lawsuit is defined by its pleadings, notably, the Complaint, and one cannot amend a complaint by way of briefing in support of or in opposition to a motion for summary judgment. *Tucker v. Union on Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). On the other hand, the declaratory judgment exception to the doctrine of *res judicata* makes clear that the preclusive effect of an earlier declaratory judgment action only goes as far as the actual matters decided in that earlier action.

Although the scope of the Complaint in the Louisiana Coverage Action is quite broad, given that it contained no date restrictions, did not specify particular insurance policy numbers, and simply sought defense and indemnification for all the claims brought by the *Blackwell* plaintiffs, it is quite clear from the record of that case that the only issues actually decided by the district judge were: (1) whether the hearing losses complained of in the *Blackwell* Lawsuit involved "bodily injury by accident" or "bodily injury by disease;" and (2) since, the court ruled that the losses were the latter, whether the 36-month time limitations served to preclude coverage under the policies that contained that limitation. The briefs and supporting materials filed with respect to the MPSJ and the MSJ, as well as the transcripts of the proceedings during which the district judge resolved those motions, make clear that all parties and the district judge were operating under the impression that five particular insurance policies with pre-1984 effective dates were the only policies at issue.

Because the Louisiana Coverage Action did not specifically address post-1984 insurance policies (which did not contain the 36-month restriction), Bridgestone/FP is not precluded by the doctrine of *res judicata* from bringing this instant lawsuit. That said, the Court notes that issue preclusion does apply here, prohibiting re-litigation of the question of "bodily

injury by accident" vs. "bodily injury by disease." Under the ruling by the district court in the Louisiana Coverage Action, the hearing loss suffered by each *Blackwell* plaintiff was a "bodily injury by disease."

The Court's conclusion is supported by *BGB Pet Supply, Inc. v. Nutro Prods., Inc.*, No. 96-1337, 1997 WL 476519, at *4-5 (6th Cir. Aug. 19, 1997), in which the Sixth Circuit adopted the reasoning of the Restatement of Judgments § 33. It held that the preclusive effect of a declaratory judgment does not extend to issues not litigated, including additional claims by the plaintiff or counterclaims by the defendant. Although the Circuit was applying Ohio law and predicting what the Ohio Supreme Court would do if it were faced with this question, the court's reasoning is persuasive here. The Circuit noted that "the goal [of declaratory judgment actions is] quick and efficient access to the courts[,]" a goal that is supported by the position in the Restatement. *BGB Pet Supply*, 1997 WL 476519, at *5.

Further, the statute under which this Court has jurisdiction to entertain declaratory judgment actions also recognizes that the preclusive effect of a declaratory judgment does not extend to matters not actually litigated. It provides, in relevant part, that the Court "may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*" 28 U.S.C. § 2201(a) (emphasis added).

### III. CONCLUSION

For the reasons discussed herein, the Court concludes that the instant lawsuit is not barred by *res judicata*. Accordingly, defendants' Motion to Dismiss (Doc. No. 12) is **DENIED**.

## IV. SUBSEQUENT PROCEEDINGS

Although the Court has determined that this action is not barred by the doctrine of *res judicata* due to the declaratory judgment exception to that doctrine, the Court now directs Bridgestone/FP to show cause in writing within seven (7) calendar days of the date of this Memorandum Opinion and Order why this action should not be transferred to the U.S. District Court for the Western District of Louisiana. PEIC shall have an additional seven (7) calendar days to file any response.

**IT IS SO ORDERED**.

Dated: March 23, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**